UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>IAN GREGORY THOW,<br><br>             Debtor. | Chapter 15<br><br>No. 05-30432<br><br>**DECISION ON MOTIONS**<br>**FOR ACCESS** |

    Before the court are motions brought by news media seeking to intervene in this Chapter 15[1] proceeding for the limited purpose of gaining access to the Rule 2004 examination of the Debtor, taken by the foreign representative, and to the record of that examination (which has not been filed), as well as access to any future examinations.

    I conclude that the public interest in allowing the media to bring their motions is cause for intervention, but that the Rule 2004 examination is in the nature of discovery, and good cause to deny press access has been established.

    Accordingly, I will GRANT intervention but DENY access.

---

[1] Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23. "Rule" references are to the Federal Rules of Bankruptcy Procedure, "FRCP" and "FRE" refer to the Federal Rules of Civil Procedure and of Evidence, respectively. "LGR" and "LCR" refer to the Local General and Local Civil Rules, W.D. Washington.

05-30432 (Ian Gregory Thow)
DECISION ON MOTIONS FOR ACCESS - 1 of 15

**I. FACTS**

On 2 November 2005, Wolridge Mahon, an accounting firm and a licensed trustee in British Columbia, Canada, (the "Canadian Trustee") filed a petition for recognition of the voluntary bankruptcy case commenced by Mr. Thow on 21 July 2005, pending before the Supreme Court of British Columbia, <u>In the Matter of the Bankruptcy of Ian Gregory Thow</u>, 2005 BCSC 1299, as a foreign main proceeding. § 1502(4), (7). Chapter 15, enacted as part of BAPCPA, incorporated the Model Law on Cross-Border Insolvency, promulgated by UNCITRAL (The United Nations Commission on International Trade Law) at its Thirtieth Session, 12-30 May 1997, into the Bankruptcy Code. I entered a recognition order on 10 November 2005 (docket no. 16).

According to the Administrative Office of the United States Courts, this was the first recognition order under Chapter 15. There was an earlier Chapter 15 petition, World Renown Enterprises, a "non-domestic non-resident," No. 05-32900, E.D. Penn., filed 27 October 2005, but it was dismissed by the court <u>sua sponte</u> the following day because the person purporting to be its authorized representative filed the petition in violation of a prior order barring him from filing any further bankruptcies.

Ian Gregory Thow ("Thow" or "Debtor") was an investment advisor doing business in Victoria, British Columbia, with Berkshire Investment Group. In early July 2005 he faced multiple court and administrative proceedings initiated by the British Columbia Securities Commission, which issued orders to freeze Thow's assets, and dozens of lawsuits filed in Canada by investors asserting approximately $28 million (Canadian, although the relative values of the U.S. and Canadian dollars are of no moment here) in claims against him. After submitting a

proposal, i.e., a plan, in his Canadian bankruptcy, Thow (a U.S. citizen) relocated to the United States.

On 22 December 2006 I entered an ex parte order (docket no. 24) authorizing the Canadian trustee to conduct an examination of Thow pursuant to Rule 2004. Disputes arose about the scope of the examination, and after proceedings in the Canadian bankruptcy, the Canadian court entered an order on 22 August 2007:

> THIS COURT REQUESTS:
>
> 1.  the aid and assistance of the United States Bankruptcy Court and, in particular, the aid and assistance of the United States Bankruptcy Court, Western District of Washington at Seattle (the "US Court");
>
> 2.  that the bankrupt herein, Ian Gregory Thow, be examined under oath by counsel for the Trustee, Wolrige Mahon Limited, and that such examination deal with the conduct of the bankrupt and his business and financial affairs, and that the bankrupt be required to produce to counsel for the Trustee at or before any such examination all of the bankrupt's records . . . tax returns and all other documents dealing with his financial circumstances;
>
> 3.  that such examination be conducted in the presence of a US Court Judge or alternatively, at or nearby the courtroom of the Judge of the US Court presiding over the bankrupt's Chapter 15 case, such that the bankrupt may be brought before the Judge in person and the US Court can readily enforce this Order with appropriate sanctions, should the bankrupt fail or refuse to testify, produce documents or otherwise comply in any respect with this Order[.]

Order No. B051318, Vancouver Registry (the "BCSC Order").

Thereafter I entered a stipulated order on 16 October 2007 (docket no. 49), to which the BCSC Order is attached as exhibit B. Thow stipulated to be examined by the Canadian Trustee's counsel, and the order required him to

> answer under oath as to the conduct of Mr. Thow and his business and financial affairs including, without limitation: (a) the property of the debtor; (b) the debtor's income; (c) the debtor's expenses; (d) the debtor's employment; (e) details of all premises leased by the debtor in Seattle or

elsewhere since the date of debtor's Canadian bankruptcy; (f) dispositions of property by the debtor; (g) any monies paid to the debtor since the date of the debtor's Canadian bankruptcy; (h) any property of the debtor located outside of Canada; and (i) those topics addressed in the written questions attached to the Court's prior order.

The 2004 examination was scheduled to be taken at the federal courthouse in Seattle on Monday, 29 October 2007.

Multiple Canadian news organizations contacted chambers and the clerk's office in the latter part of the week preceding the scheduled examination, inquiring whether reporters could cover the examination. They were advised by staff that the parties would need to be heard, but that they could send reporters who might or might not be allowed to attend the examination. Staff advised counsel of the inquiries, and so noted on the docket.

On Monday morning, a jury room was set aside for the examination, in part because the digital recording system in the courtroom is always on. Reporters from CHEK-TV, a Victoria television station, the Times-Colonist, a Victoria daily newspaper, and the Canadian Broadcasting Company were present in the courtroom seeking to attend the examination.

After a brief conference in chambers, requested by the parties' counsel, I convened court and heard the journalists' informal requests to attend the examination, made orally and without counsel, and the parties' oral objections to those requests, which were along the lines of their formal arguments recounted below.

I ruled that the media could not attend the examination but could move to intervene and seek a transcript. Thereafter, CHEK-TV and the Times-Colonist jointly filed the instant motion (docket no. 53). Global BC TV, owner of another Victoria, B.C., television station joined by

later filing a brief motion requesting the same relief and with the same counsel (docket no. 63). The moving parties (collectively the "News Media") request intervention, an order that an audio recording or written transcript of the examination be filed and made available to them, and that they be permitted to attend future examinations.

## II. JURISDICTION

This is a core proceeding within this court's jurisdiction. 28 U.S.C. § 1334(a) and (b), and 157(a) and (b)(2)(P); LGR 7, part I, Local Rules, W.D. Washington.

## III. DISCUSSION

This matter came on for hearing on 8 November 2007 on the News Media's motions. I have considered those, Debtor's objection (docket no. 56), the Canadian Trustee's objection (docket no. 57), the News Media's reply (docket no. 62), the supporting declarations, and arguments of counsel.

### A. **Motion to Intervene**

The press may intervene in actions to which it is not otherwise a party, including a bankruptcy case, to move for access to court records or to dissolve a protective order. In re Symington, 209 B.R. 678, 690 (Bankr. D. Md. 1997); In re Apex Oil Co., 101 B.R. 92, 95-96 (Bankr. E.D. Mo. 1989); In re Ionosphere Clubs, Inc., 156 B.R. 414, 431 n.6 (S.D.N.Y. 1993). None of the News Media asserts a claim against Thow, or is otherwise a party in interest.

It is undisputed that there is public interest in these proceedings, as evidenced by the press clippings attached to the News

Media's motion as Exhibit A (docket no. 53), of which I take judicial notice. FRE 201. Although the interested public is Canadian, no party contends that nationality is significant, and the domestic public has, as always, an interest in the proper functioning of the courts.

Thow objects to intervention, arguing that there is no common question of law or fact. However, he concedes that Rule 2018[2] permits limited intervention by a third party to challenge a protective order. In re Alterra Healthcare Corp., 353 B.R. 66, 70-72 (Bankr. D. Del. 2006). This proceeding is not such a challenge, but it is functionally the equivalent, and implicates the same issues.

Here, as in Apex, it is disputed whether or not the documents requested by the News Media would be judicial records (it is not clear that any yet exist, and none have been filed), and the News Media argue that the 2004 examination is a judicial proceeding. Permitting the News Media to address the merits of their motions for access is cause for intervention, see Apex Oil, 101 B.R. at 96, and I will grant those motions.

**B. Motion for Access**

    **1. Court proceeding?**

Rule 2004 provides:

> On motion of any party in interest, the court may order the examination of any entity . . . [relating] only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

---

[2] Rule 2018 provides: "In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter.

Rule 2004 examinations are generally broader in scope than pre-trial depositions authorized under FRCP 26, being "in the nature of a fishing expedition." In re Apex Oil Co., 101 B.R. 92, 102 (Bankr. E.D. Mo. 1989). See also In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).

The News Media argue that they had a right to attend the Rule 2004 examination and to a recording or the transcript of the examination, as well as a right to attend any future examinations, based on the common law presumption of public access to civil court documents and proceedings. Nixon v. Warner Communications, 435 U.S. 589, 597 (1978); San Jose Mercury News v. U.S.Dist. Court, 187 F.3d 1096, 1101-02 (9th Cir. 1999). In Nixon, the Supreme Court recognized a federal common law right to judicial records and documents. 435 U.S. at 597. In San Jose Mercury News, the Ninth Circuit noted that "the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public." 187 F.3d at 1103. The News Media also cite Rule 5001(b),[3] which requires public access to bankruptcy court hearings and trials, § 107(a),[4] which requires public access to bankruptcy court documents, and LCR 5(g)(1).[5]

---

[3] Rule 5001(b) provides, in relevant part: "All trials and hearings shall be conducted in open court and so far as convenient in a regular court room."

[4] Section 107(a) provides, in relevant part: "[A] paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge. . . ."

[5] LCR 5(g)(1) provides, in relevant part: "There is a strong presumption of public access to the court's files and records . . . ."

The News Media rely heavily on In re Symington, 209 B.R. 678 (Bankr. D. Md. 1997). In that case the court held that "the press and the public are entitled to attend Rule 2004 examinations because such examinations were historically public proceedings and because public access plays [a] significant role in the bankruptcy process." Id. at 681. They further rely on In re Robert Landau Assocs., 50 B.R. 670, 675 (Bankr. N.Y. 1985), in which the court noted the absence of any statute or regulation deeming testimony obtained in a Rule 2004 examination confidential. However, the Landau court noted that it was within the court's inherent authority to issue a confidentiality order. Id.

The Symington court ruled that a Rule 2004 examination is presumptively public based on the rule's predecessor statutes and rules: section 21(a) of the Bankruptcy Act of 1898 (superseded by the Code) and former Rule 205. Section 21(a) of the Act provided that debtor examinations were to be held before the court. See also In re Winton Shirt Corp., 104 F.2d 777, 780 (3d Cir. 1939) ("We entertain no doubt that the examination of witnesses pursuant to the provisions of section 21(a) of the Bankruptcy Act must take place at a public hearing."). Notably, Rule 2004 contains no such provision, and the Bankruptcy Reform Act of 1978, enacting the Bankruptcy Code, ended the bankruptcy judge's case administrative function and changed the judicial role to a "passive arbiter of disputes that arise in bankruptcy cases." In re Telesphere Communications, Inc., 179 B.R. 544, 551 (Bankr. N.D. Ill. 1994) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 107 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6069).

This change in the role of bankruptcy judges eviscerates the argument that Rule 2004 examinations are presumptively public court proceedings. Rather, such examinations are a vehicle to facilitate the

administration of the bankruptcy estate. See Enron, 281 B.R. at 840 ("Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for discovering assets, examining transactions, and determining whether wrongdoing has occurred." (citations omitted)).

The Symington court further opined that allowing 2004 examinations to be open to the public would increase the likelihood that the witness will be truthful, citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 594-95 (1980). In that case, Justice Brennan extolled the virtues of open criminal trials. But a Rule 2004 examination is not a trial. It is a means for the examining party to discover facts that will enable effective administration of the estate, including preliminary inquiry into claims of the debtor or the estate against others, and obtaining records from third parties, as well as obtaining documents and sworn testimony from a debtor. The policies that underlie public court proceedings, whether civil or criminal, do not necessarily hold true for pre-litigation inquiries. See Seattle Times, 467 U.S. at 33.

Finally, the News Media also contend that, because the stipulated order provided for the 2004 examination to take place in the courthouse, it became a "court proceeding" subject to a presumption of public access. But the courthouse was chosen as the examination location so as to facilitate the resolution of disputes, if any, about the scope of the examination, in deference to the request of the Canadian court:

THIS COURT REQUESTS . . .

3. that such examination be conducted in the presence of a US Court Judge or alternatively, at or nearby the courtroom of the Judge of the US Court presiding over the bankrupt's Chapter 15 case, such that the bankrupt may be brought before the Judge in person and the US Court can readily enforce this Order with appropriate sanctions, should the

>                bankrupt fail or refuse to testify, produce
>                documents or otherwise comply in any respect with
>                this Order[.]

BCSC Order.

Opposing the request for access, Debtor and the Canadian Trustee assert that, because this is a Chapter 15 case and ancillary to a foreign proceeding, it should be subject to different procedures than a case brought under one of the other chapters of the Code. The Canadian Trustee points out that an examination conducted under section 163 of Canada's Bankruptcy and Insolvency Act is not open to the public. See Decl. of John I. McLean (Docket No. 58; Exhibit A, docket No. 61). That may be, but the Canadian Trustee and Canadian court have requested the aid and assistance of a United States court, and although Congress has directed in § 1525 that I "cooperate to the maximum extent possible," it has not displaced the Code or the Rules — in fact, the provisions of §§ 1519-1524 all contemplate cooperation within the framework of the laws of the United States.

Debtor and the Canadian Trustee argue that a Rule 2004 examination is akin to a pre-trial deposition, not historically a public component of a civil trial. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984). In Seattle Times, the Supreme Court recognized that there is no common law or First Amendment right to inspect discovery materials. 467 U.S. at 33-34. Courts have denied access to Rule 2004 documents and transcripts for this reason, when shown good cause by the opponents of access. In re Apex Oil Co., 101 B.R. 92, 102-103 (Bankr. E.D. Mo. 1989); In re Ionosphere Clubs, Inc., 156 B.R. 414, 431-433 (S.D.N.Y. 1993).

Rule 2004 examinations are generally initiated by ex parte motion of counsel for an interested party, and attendance and production of

documents compelled by the examining counsel's issuance and service of a subpoena. Rules 2004 and 9016. Past practice, still used in some courts, was to order attendance and production in the order for the examination, which does not clearly afford the examinee a mechanism to object, as FRCP 43(c), incorporated by Rule 9016, does to the recipient of a subpoena.

Nor are transcripts of Rule 2004 examinations and documents used as exhibits therein routinely filed with the court, and they are not judicial records unless and until they are filed with the court. See Apex Oil, 101 B.R. at 97-98; Ionosphere Clubs, 156 B.R. at 432. Nor do the Rules require examinations to be transcribed or transcripts to be filed. In any event, none has yet been filed of the examination of Thow.

Rule 2004 examinations are akin to depositions under the FRCPs and therefore are not presumptively public. See Seattle Times, 467 U.S. at 33. If anything, the concerns identified in Seattle Times — potential abuse, violations of privacy, id. at 34-35 — weigh more heavily in the Rule 2004 context. An examination under that rule is potentially more intrusive because, in addition to its broader scope, it may lack some of the procedural safeguards of discovery under the Civil Rules. One court has held: "the witness has no right to be represented by counsel except at the discretion of the court; there is only a limited right to object to immaterial or improper questions; there is no general right to cross-examine witnesses; and no right to have issues defined beforehand." In re Dinubilo, 177 B.R. 932, 939-40 (E.D. Cal. 1993) (citing In re GHR Energy Corp., 33 B.R. 451, 454 (Bankr. D. Mass. 1983)). Those issues are not here presented — Thow was accompanied by both bankruptcy and criminal defense counsel — and I express no opinion on such questions.

The statutes, rules, and case law regarding the open nature of court proceedings and documents are simply inapplicable. See Apex Oil, 102 B.R. at 98; Ionosphere Clubs, 156 B.R. at 433.

**2. Discovery**

As noted, the Ninth Circuit stated that the fruits of pretrial discovery are "presumptively public" in San Jose Mercury News, 187 F.3d at 1103 (citing Citizens First Nat'l Bank v. Cincinnati Ins. Co., 178 F.3d 943, 944-45 (7th Cir. 1999); Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 789 (1st Cir. 1988), and In re Agent Orange Product Liability Litig., 821 F.2d 139, 145-46 (2d Cir. 1987)). But the continued viability of that statement, and its applicability here, is doubtful. First, the court did not distinguish between "fruits" that had been filed with the court and those that had not, nor is it clear whether unfiled documents were at issue in that case. Second, the case law relied upon by the court provides only shaky support for the proposition that unfiled discovery materials are public.

In Citizens First Nat'l Bank, although the court opined that the public "has an interest in what goes on at all stages of a judicial proceeding," 178 F.3d at 944-45, the cases it relied upon (Grove Fresh Distributors, Inc. v. Everfresh Juice Co., 24 F.3d 893 (7th Cir. 1994); Littlejohn v. BIC Corp., 851 F.2d 673 (3d Cir. 1988); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980)) all involved access to court proceedings or filed documents.

In Agent Orange, the court held that FRCP 26(c) and FRCP 5(d) supported the conclusion that discovery is presumptively open to public scrutiny. 821 F.2d at 145. Regarding FRCP 26(c), the court noted that the existence of a good cause requirement for protective orders under

that rule implied that in the absence of such cause all discovery materials were presumptively public. Id. at 145-46 (citation omitted). But when Agent Orange and Public Citizen were decided, FRCP 5(d) required the filing of discovery materials with the court (subject to local rule or court order to the contrary).

The Agent Orange holding was somewhat undercut by the 2000 amendments to FRCP 5(d),[6] which now prohibits the filing of most discovery materials unless they are used in the proceeding or the court orders filing. Securities & Exchange Comm'n v. TheStreet.com, 273 F.3d 222, 233 n.11 (2d Cir. 2001).

Nor is the argument that the provision for protective orders in FRCP 26 implies a right of public access persuasive. See Richard L. Marcus, A Modest Proposal: Recognizing (at Last) that the Federal Rules do not Declare That Discovery is Presumptively Public, 81 Chicago-Kent L. Rev. 331 (2006). Nothing in the Federal Rules of Civil Procedure purports to grant public access to unfiled pre-trial discovery materials. FRCP 26(c) refers to parties, and although third-party intervention confers party status to the extent it is granted, this does not mandate the conclusion that there is a general public right of access to unfiled discovery materials in the absence of a protective order. I conclude there is no such right.

---

[6] FRCP 5(d) in its current form provides:

All papers after the complaint required to be served upon a party, together with a certificate of service, must be filed with the court within a reasonable time after service, but disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: (i) depositions, (ii) interrogatories, (iii) requests for documents or to permit entry upon land, and (iv) requests for admission.

05-30432 (Ian Gregory Thow)
DECISION ON MOTIONS FOR ACCESS - 13 of 15

**3. Good cause?**

In any event, if the rules do confer a right of public access, access may be denied for "good cause." <u>Apex Oil</u>, 101 B.R. at 98, citing <u>Seattle Times</u>.

Just as it did not create a new structure outside the Code and Rules in enacting Chapter 15, Congress did not displace the Constitution. Debtor argues that good cause exists for denying the News Media access to the information elicited by the Rule 2004 examination, as it includes private information, such as his personal financial information,[7] the location of his residence, and names of third parties who have assisted him financially. Debtor also asserts that he has received personal threats and was recently fired because of media attention to this case, although he did not submit any evidence in support of these assertions.

The Canadian Trustee contends that premature disclosure may allow some creditors to locate and collect offshore assets, to the detriment of the estate's general unsecured creditors, and that further examinations of third parties may be prejudiced. I note that the BCSC Order specifically calls for inquiry regarding dealings with a Jamaican bank.

The News Media argue only that they should be allowed access because their viewers and readers have been following the Thow story and are "extremely interested" in the proceedings against Debtor.

I conclude that there is good cause for withholding access at this time. The Debtor's privacy interests and the effective administration of the estate, including the possible recovery of offshore assets,

---

[7] A concern which will be somewhat alleviated when new Rule 9037 becomes effective tomorrow.

outweigh the News Media's right to report on proceedings in the nature of discovery. While the press has a right to report on public activities such as a trial, "it has less of a right to exploit bankruptcy procedures as a means of delving into the private financial affairs of third parties." <u>Apex Oil</u>, 101 B.R. at 103. When and if the Rule 2004 examination transcript or related documents are filed in this court, the News Media will have access to those materials, absent a protective order, and as intervenors they will have a right to be heard if one is requested.

**IV. CONCLUSION**

For the reasons set forth above, I will GRANT the News Media's motions to intervene and DENY their motions for access. A separate order will issue.

///

///

///

Philip H. Brandt
United States Bankruptcy Judge
(Dated as of "Entered on Docket" date above)